George TRENKLE, Plaintiff,

v.

COMPAGNIE GENERALE TRANSATLANTIQUE, a corporation, Defendant.

COMPAGNIE GENERALE TRANSATLANTIQUE, a corporation, Third Party Plaintiff,

v.

CRESCENT WHARF & WAREHOUSE COMPANY, a corporation, Third Party Defendant.

No. 1104/58.

United States District Court
S. D. California,
Central Division.

Jan. 4, 1960.

Wright, Los Angeles, Cal., for third party plaintiff.

Robert Sikes, Los Angeles, Cal., for third party defendant.

WESTOVER, District Judge.

The Crescent Wharf & Warehouse Company, a corporation, entered into a written contract with Compagnie Generale Transatlantique, a corporation, relative to stevedoring work to be performed at San Pedro Harbor, Los Angeles County, California, under which contract Crescent Wharf & Warehouse Company, third party defendant in this action, was to furnish longshoremen for the loading and unloading of vessels belonging to Compagnie Generale Transatlantique, third party plaintiff. On or about March 8, 1958, in accordance with said contract, third party defendant dispatched to the M. S. Winnipeg longshoreman gangs for the purpose of loading the ship.

Plaintiff herein was a hold man in the gang assigned to hatch No. 4. The longshoremen removed from the hatch some of the hatch boards, which boards were placed in lockers adjacent to the hatch. The hold men then proceeded to the 'tween deck where their work was to be performed. Ingress and egress to and from the 'tween deck was by means of a ladder at the aft of the hatch. There was also a ladder forward of the hatch, but as cargo had been stored adjacent to the ladder in the 'tween deck the forward ladder was unavailable for use below the shelter deck. The hold men used the aft ladder to get to and from the stations where their work was to be performed.

Sometime during the morning of the 8th of March, 1958, plaintiff who was then working in the 'tween deck, being entitled to a coffee break, decided to go top-side and off the ship where he could obtain coffee. In leaving the hold plaintiff used the aft ladder, then proceeded forward to the gang-plank and off the ship to the wharf. In returning to his station plaintiff after reaching the hatch, instead of descending to the 'tween deck by means of the available aft ladder, used the forward ladder which was open

Lillick, Geary, McHose, Roethke & Myers, William H. Brainerd, Gordon K.

only to the shelter deck. At the shelter deck he left the forward ladder and proceeded toward the aft ladder by means of a walkway along the starboard side of the open hatch.

The walkway was approximately sixteen inches wide. There was no guard rail on the hatch side of the walkway, but on the bulkhead side handrails had been installed. Because part of the bulkhead was formed by the sliding doors of the lockers the handrail was not continuous. As plaintiff proceeded along the walkway, and at a point where there was no handrail along the bulkhead, for some unknown reason he lost his balance and fell into the open hatch, suffering severe injuries. Subsequently, plaintiff commenced this action against the defendant.

After answer was filed, defendant was permitted to file a third party complaint naming the Crescent Wharf & Warehouse Company, a corporation, as third party defendant. Prior to trial, plaintiff and defendant (the third party plaintiff) entered into a settlement by which defendant admitted the ship in question to be unseaworthy and paid to plaintiff the sum of $70,000 in full compensation for his injury. Thereupon, the action between plaintiff and defendant was discontinued and defendant, as third party plaintiff, proceeded against the third party defendant.

At the time of trial third party plaintiff announced it was predicating its cause of action against third party defendant upon contract. In fact, third party plaintiff's claim could have been predicated only upon the theory of contract. Weyerhaeuser S. S. Co. v. Nacirema Operating Co., 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491; Brown v. American-Hawaiian S. S. Co., 3 Cir., 211 F.2d 16; Oleszcuk v. Calmar Steamship Corporation, D.C., 164 F.Supp. 628.

The contract under which the action is prosecuted reads, in part, as follows:

"The Stevedoring Company will be responsible for damage to the ship and its equipment, and for damage to cargo or loss of cargo overside, and for injury to or death of any person, caused by its sole negligence, provided, however, when such damage occurs to cargo, the ship's officers or other authorized representatives call the same to the attention of the Stevedoring Company at the time of occurrence or within a reasonable time thereafter. The Steamship Company shall be responsible for injury to or death of any person or for any damage to or loss of property arising through the sole negligence of the Steamship Company or any of its agents or employees, or by reason of the failure of ship's gear and/or equipment."

At the trial no one was able to testify as to the cause of plaintiff's fall. The witnesses who testified stated they noticed plaintiff in the act of falling. One witness said, however, that plaintiff's hand was extended out towards the bulkhead as if searching for a handrail which was not there.

Witnesses further testified that immediately after the accident they went up to the shelter deck to see if there was any debris or foreign substance on the walkway which could have caused plaintiff to fall. All witnesses agreed the walkway was clear and there was nothing on it that could have tripped plaintiff or could have caused him to slip and fall.

Third party plaintiff introduced evidence to the effect that the injured party had been a prize-fighter and during his fighting career had received numerous blows to the head. Evidence was also introduced to the effect that plaintiff had lost nearly complete sight of one eye and that he was not sure on his feet, walking in a shuffling manner.

It is possible plaintiff may have tripped over his own feet, or that because of having sight in only one eye he misjudged the width of the walkway and stepped off it, or he may have temporarily "blacked out" and lost consciousness, thus occasioning the fall. Plaintiff testified that he did not remember the fall or what was the cause thereof.

Prior to the trial herein plaintiff stevedore and defendant steamship company entered into a stipulation by which the steamship company admitted the vessel "was unseaworthy by reason of a narrow walkway on the starboard side of No. 4 shelter deck, being without a continuous handrail or other protective device, and that as a result of said condition and while plaintiff was traversing said walkway plaintiff did fall * * * "

If plaintiff's fall resulted from something which third party defendant did or failed to do, then under the contract third party plaintiff would be entitled to recover from third party defendant; but if the fall was not proximately caused by something third party defendant did or failed to do, then the responsibility would be upon the third party plaintiff. Third party plaintiff has admitted the ship was unseaworthy because of the narrowness of the walkway and the absence of a continuous handrail. It cannot be contended that third party defendant had anything to do with the design and building of the ship and the installation of the walkway or the handrail. If the narrowness of the walkway and the lack of a continuous handrail made the ship unseaworthy, then the unseaworthiness must be laid at the door of the ship owner.

■ As we understand judicial interpretation of contracts similar to that which existed between Crescent Wharf & Warehouse Company and third party plaintiff, the rule is that if their stevedores by their own acts or omissions caused injury, then the stevedoring company would be liable, but if the injury is caused by the failure of the gear and equipment of the ship or because of some negligent act of the ship's employees, then the ship will be liable. Crumady v. The Joachim Hendrik Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413.

Third party plaintiff has cited to the Court United States v. Arrow Stevedoring Co., 9 Cir., 175 F.2d 329, as authority for holding the stevedoring company liable in the case at bar. In the cited case, however, the Court found the sole cause of the employee's injury was the negligence of the stevedoring company in using a door with knowledge of its defect.

In United States v. Harrison, 9 Cir., 245 F.2d 911, the Court found that the acts of the stevedore did not cause the ship to become unseaworthy.

Although third party plaintiff in the case at bar has stipulated injury to plaintiff was occasioned by the unseaworthiness of the vessel because of the narrow walkway and the lack of handrails, nevertheless, it contends it is entitled to recover against third party defendant upon the theory that third party defendant had violated its contract by failing to send to third party plaintiff a healthy, adequate stevedore—the plaintiff herein.

Third party plaintiff contends there is an implied understanding between the stevedoring company on the one hand and the shipping company on the other that stevedores when assigned to the various ships for duty will be fit for the purpose for which they are sent.

The United States Supreme Court, in Ryan Stevedoring Co., Inc. v. Pan-Atlantic S. S. Corp., 350 U.S. 124, at page 133, 76 S.Ct. 232, at page 237, 100 L.Ed. 133, speaking about the liabilities of the respective parties in a contract similar to that in the instant case, states;

" * * * That agreement necessarily includes petitioner's obligation not only to stow the pulp rolls, but to stow them properly and safely. Competency and safety of stowage are inescapable elements of the service undertaken. This obligation is not a quasi-contractual obligation implied in law or arising out of a noncontractual relationship. It is of the essence of petitioner's stevedoring contract. It is petitioner's warranty of workmanlike service that is comparable to a manufacturer's warranty of the soundness of its manufactured product. * * * "

If there is a warranty on the part of the stevedoring company to perform its services in a workmanlike manner, then necessarily there must be a warranty upon the stevedoring company to furnish

stevedores who are at least reasonably fit to perform the services to which they have been assigned.

Third party plaintiff contends plaintiff in this action, because of his physical disabilities, was not reasonably able to perform the services as a hold man. It appears from the evidence that plaintiff had worked off and on as a longshoreman from 1940 to 1950 and had worked steadily in such capacity since 1950. No evidence of any kind was produced to show plaintiff had ever caused or been involved in any longshore accident during all of his years on the water front; and there was no evidence introduced to establish the fact he had ever been laid off or unable to work because of physical disability.

Under the cases it is plainly the responsibility of the stevedoring company to assign physically adequate longshoremen to do the necessary work involved in the loading and unloading of ships. When it is contended by a ship owner that a longshoreman is not physically fit to perform the services to which he has been assigned, it would seem to the Court this becomes a factual question to be decided by the trier of the facts and that the burden rests upon the party making the assertion to establish the accident was the proximate result of the physical disability of the longshoreman.

There is no evidence before the Court to sustain a finding that plaintiff was not an adequate hold man. As long as he remained in the hold and did his work he had no difficulty. His accident did not occur in the hold. He fell when he attempted to return to the hold after a coffee break. It is possible that plaintiff fell because of his own carelessness or negligence.

This is an action against the stevedoring company. To hold the company some evidence must be produced to show that the company or some of its employees (other than the plaintiff) failed to do something which should have been done or did something which the company should not have done.

There is nothing in the testimony to indicate in the slightest degree that the stevedoring company (third party defendant herein) did or caused to be done any act which would have brought about plaintiff's fall or omitted to do some act from which omission plaintiff's fall resulted.

Judgment must be for third party defendant. Findings of fact, conclusions of law and judgment shall be prepared by third party defendant in conformity with the foregoing opinion, to be presented to the Court for signature on or before January 22, 1960.